**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

JESSE SANDLIN,               )
                               )
          **Appellant,**     )
                               )
v.                           )     **No. 14-2513-STA-dkv**
                               )
CITIMORTGAGE, INC.,     )
                               )
          **Appellee.**      )

---

## OPINION

---

Appellant Jesse Sandlin, who is proceeding *pro se*, appeals the decision of the United States Bankruptcy Court for the Western District of Tennessee to grant Appellee CitiMortage, Inc.'s ("CitiMortgage") motion for summary judgment and deny Sandlin's cross-motion for summary judgment. For the reasons set forth below, the decision of the Bankruptcy Court is **AFFIRMED**.

## BACKGROUND

In its May 5, 2014 summary judgment order, the Bankruptcy Court set out the full factual and procedural background of this case. Mr. Sandlin filed a Chapter 13 petition on May 14, 2009. CitiMortgage holds a note and deed of trust secured by Mr. Sandlin's residential property located at 4742 Kassell Cove, Memphis, Tennessee. During the Chapter 13 case, CitiMortgage filed a claim, and a claims allowance process dispute arose between the parties. The Bankruptcy Court eventually overruled Mr. Sandlin's objection to CitiMortgage's proof of claim in an order dated April 21, 2010. Mr. Sandlin timely appealed the decision to this Court, and the appeal was docketed as civil case no. 10-2716-STA-dkv. Mr. Sandlin also filed a separate civil suit in this

District, case no. 09-2294-JPM-cgc, alleging wrongful foreclosure and other causes of action against CitiMortgage.[1]  While Mr. Sandlin's appeal and civil suit were pending, the parties participated in mediation and agreed to a global settlement of all disputes.

The parties memorialized their global settlement in a Settlement Agreement and Release dated June 5, 2012, and a Modification Agreement dated August 6, 2012.  On August 6, 2012, this Court entered an agreed order dismissing Mr. Sandlin's bankruptcy appeal in case no. 10-2716-STA-dkv and a separate agreed order dismissing Mr. Sandlin's civil suit in case no. 09-2294-JPM-cgc, both with prejudice.  Thereafter, on August 13, 2012, the Bankruptcy Court entered an Amended Agreed Order Resolving Pending Contested Matters and Approving Loan Modification.  Together, all of these agreements and orders resolved all pending litigation between the parties, released CitiMortgage from all of Mr. Sandlin's claims, and resulted in a modified loan agreement.  Specifically, the parties agreed, among other things, to a reduced loan balance of $144,385.99 to be amortized over 30 years beginning on July 1, 2012, at a modified contractual interest rate of 2.5%.  Mr. Sandlin was responsible for the payment of local property taxes and insurance on the home, eliminating the need for an escrow account.

Following the loan modification and global settlement, Mr. Sandlin made all monthly home mortgage payments as they became due.  However, when Mr. Sandlin did not pay all of the 2012 or 2013 real property taxes, CitiMortgage exercised its rights under the modification

---

[1] The initial complaint in Mr. Sandlin's civil suit also included his spouse Ada Sandlin as a plaintiff in the case.  The Court held that Mrs. Sandlin was not a proper plaintiff because she did not personally sign the complaint and Mr. Sandlin, a non-lawyer, could not represent her. Order Correcting the Docket 2, May 13, 2009, (ECF No. 4) no. 09-2294-JPM-cgc.  Mr. Sandlin later amended his complaint but did not include Mrs. Sandlin as a plaintiff.

For the sake of clarity, Mrs. Sandlin is not a plaintiff in this matter, even though Mrs. Sandlin signed the settlement agreement modifying the loan and also submitted an affidavit in support of Mr. Sandlin's motion for summary judgment.  Any references to "the Sandlins" in this order should be understood in light of the correct procedural history of the litigation and the fact that only Mr. Sandlin is a party to the action.

agreement and paid the delinquent taxes for 2012 and 2013. To recoup its expenses from Mr. Sandlin, CitiMortgage setup a new escrow account.

On September 27, 2013, Mr. Sandlin filed an adversary proceeding with the Bankruptcy Court, requesting that CitiMortgage turn over improperly collected funds. Mr. Sandlin sought the intervention of the Bankruptcy Court to resolve the dispute over the payment of the Sandlins' local property taxes.[2] Mr. Sandlin actually styled the filing as a motion for an order requiring CitiMortgage, Inc. to turnover escrow funds and an objection to CitiMortgage increasing his monthly payment to escrow property taxes. Mr. Sandlin alleged that CitiMortgage had collected and held funds in escrow for the 2012 property taxes and then failed to pay them. Mr. Sandlin also objected to CitiMortgage's decision to require the Sandlins to escrow their property taxes, based on Mr. Sandlin's belief that CitiMortgage already held the tax payments in escrow. Mr. Sandlin requested that the Bankruptcy Court order CitiMortgage to turnover a total of $16,275.00 in improperly withheld funds.[3] CitiMortgage filed an answer on November 15, 2013, and a motion for summary judgment on March 21, 2014. Mr. Sandlin filed a cross-motion for summary judgment on April 16, 2014.

Following a hearing on the parties' Rule 56 motions, the Bankruptcy Court granted CitiMortgage's motion for summary judgment and denied Mr. Sandlin's cross-motion on May 5,

---

[2] Mr. Sandlin reported to the Bankruptcy Court that he had appealed his property tax assessment and claimed that as long as his appeal was pending, the taxes were not due. The Bankruptcy Court nevertheless found it undisputed that CitiMortgage paid the delinquent taxes and found no evidence that Mr. Sandlin's property taxes were ever adjusted as the result of an appeal.

[3] On January 24, 2014, Mr. Sandlin filed an "Amended Complaint to Recover Property of the Estate," seeking damages and sanctions for CitiMortgage's alleged violations of the automatic stay and other related causes of action. The Amended Complaint alleged that CitiMortgage "engaged in an elaborate scheme to conceal post-petition fees throughout [the] Chapter 13 [proceedings] including fees up to the Court approve[d] settlement agreement." Am. Compl. ¶ 1.

2014.  The Bankruptcy Court held that although the parties disagreed over many immaterial facts, there was no genuine dispute as to any material fact.  The Bankruptcy Court found that the material facts were as follows: the parties entered into a global settlement, which was approved by the Bankruptcy Court.  Mr. Sandlin released all of his pre-settlement claims and dismissed his bankruptcy appeal and civil suit with prejudice.  Despite the parties' agreement that Mr. Sandlin would pay his local property taxes directly, Mr. Sandlin failed to pay all of his property taxes for 2012 and 2013.  CitiMortgage paid the delinquent property taxes and set up a new escrow account to recover the payments it had advanced Mr. Sandlin.  Mr. Sandlin was current on his monthly mortgage payments of principal and interest but had not made payments for the balances in the escrow account.  All of the other facts related to pre-settlement events were now moot in light of the parties' settlement agreement.

Based on the undisputed facts at summary judgment, the Bankruptcy Court ruled that the doctrine of *res judicata* barred the parties from relitigating disputes that were previously settled and released.  "Mr. Sandlin essentially is attempting to relitigate claims that were previously settled and thereby recover funds from CitiMortgage that were released in the settlement."[4]  The Bankruptcy Court found that CitiMortgage's escrow claim for the taxes "arose post-settlement." Moreover, there was no dispute that all taxes were due and owing and that Mr. Sandlin had not paid his 2012 county property taxes or his 2013 city and county property taxes.  Under the circumstances CitiMortgage had a contractual right to pay any delinquent taxes and then seek repayment from Mr. Sandlin.  As a result, Mr. Sandlin owed CitiMortgage for the funds advanced for his 2012 and 2013 property taxes.  The Bankruptcy Court granted CitiMortgage's motion for summary judgment, denied Mr. Sandlin's cross-motion for summary judgment, and

---

[4] Order Granting Mot. for Summ. J. 5, May 5, 2014.

dismissed Mr. Sandlin's initial and amended complaints. After the denial of Mr. Sandlin's Rule 60 motions for relief from judgment, Mr. Sandlin filed a timely appeal.

On appeal Mr. Sandlin argues that the Court should reverse the Bankruptcy Court's order because CitiMortgage misapplied Mr. Sandlin's mortgage payments. After reviewing the full procedural history of his Chapter 13 case and other litigation with CitiMortgage, Mr. Sandlin raises three discrete claims. First, CitiMortgage has improperly attempted to collect charges and fees which supposedly accrued after Mr. Sandlin filed his bankruptcy petition, even though CitiMortgage never disclosed the charges and fees in the Chapter 13 proceedings. Mr. Sandlin asserts that CitiMortgage has willfully and intentionally violated the terms of his Chapter 13 plan and the automatic stay by concealing the charges to his mortgage account and misapplying payments. Second, Mr. Sandlin describes his post-settlement dispute with CitiMortgage over the payment of his local property taxes. According to Mr. Sandlin, CitiMortgage collected and escrowed the property taxes for 2012 but failed to pay the property taxes. Mr. Sandlin was forced then to pay the 2012 city property taxes himself. Third, Mr. Sandlin claims that although CitiMortgage agreed in the settlement to reduce Mr. Sandlin's loan balance by $10,000.00, CitiMortgage actually added over $9,000.00 to Mr. Sandlin's principal. Mr. Sandlin contends that CitiMortgage's actions violated the terms of the automatic stay under 11 U.S.C. § 362. For these reasons, the Bankruptcy Court wrongly held that the parties' post-settlement dispute was barred as *res judicata*, and Mr. Sandlin is entitled therefore to relief from the Bankruptcy Court-approved settlement agreement and disgorgement of the funds.

CitiMortgage has responded that the Court should affirm the Bankruptcy Court's judgment. Most of the issues raised in Mr. Sandlin's pleadings with the Bankruptcy Court are *res judicata*, and no genuine issue of material fact exists as to Mr. Sandlin's release of the

previously settled claims. Like Mr. Sandlin, CitiMortgage reviews the extensive history of the disputes between the parties, including their settlement of Mr. Sandlin's claims against CitiMortgage in 2012. CitiMortgage argues that "[t]he majority of Mr. Sandlin's arguments on appeal speak to his unsupported allegations about activity in the Mortgage Account prior to the parties' settlement of all of his claims."[5] As such, CitiMortgage maintains that nearly all of Mr. Sandlin's claims are *res judicata*, and summary judgment in favor of CitiMortgage was proper.

CitiMortgage's brief focuses mainly on the parties' dispute over the Sandlins' local property taxes.[6] CitiMortgage asserts that at mediation, Mr. Sandlin and his wife specifically negotiated for the right to pay their property taxes directly in lieu of depositing the funds into an escrow account. CitiMortgage agreed to the request and modified the loan to reflect that the Sandlins would not escrow their property taxes after September 2012. CitiMortgage subsequently received notice from the City of Memphis and Shelby County, Tennessee that the Sandlins had not paid their 2012 property taxes. Although the Sandlins later paid their city property taxes for 2012, they failed to pay the 2012 county property taxes. The Sandlins also failed to pay their city and county property taxes for 2013. Faced with a tax delinquency encumbering their collateral, CitiMortgage paid the taxes and then established a new escrow account for the amounts paid on behalf of the Sandlins. CitiMortgage filed a notice of mortgage payment change with the Bankruptcy Court and increased Mr. Sandlin's monthly payment to

---

[5] CitiMortgage's Resp. Br. 25.

[6] CitiMortgage goes into some detail to explain the parties' settlement negotiations, the four-month delay between the agreement and the execution of the settlement, the accounting of payments and funds on the Sandlins' account during that interim, CitiMortgage's payment of $3,996.25 to the Sandlins as part of the settlement, and the disposition of property insurance proceeds in the amount of $13,794.08 from an insurance claim on the Sandlins' property in 2011. The Court finds that while these facts provide greater context for the parties' course of dealing, the additional information is largely irrelevant to the issues presented in this appeal.

reflect the amounts CitiMortgage had advanced the Sandlins as payment for the delinquent property taxes.[7] In the adversary proceedings before the Bankruptcy Court, Mr. Sandlin had no proof that the taxes were not actually due and owing or that his tax bill was altered as a consequence of a tax appeal. Therefore, the Bankruptcy Court correctly held that CitiMortgage had the contractual right under the terms of the settlement agreement to pay the delinquent taxes and re-establish an escrow account to collect the taxes from the Sandlins.

In his reply brief, Mr. Sandlin argues that *res judicata* applies in this case only as to the confirmed Chapter 13 plan. Mr. Sandlin reiterates his position that CitiMortgage has misapplied plan payments and attempted to collect undisclosed or unscheduled fees and charges outside of the terms of the Chapter 13 plan. Mr. Sandlin contends that a genuine dispute exists about CitiMortgage's accounting, though Mr. Sandlin does not cite any record evidence to support his position. Mr. Sandlin concludes by arguing that CitiMortgage fraudulently withheld information about fees and costs in an attempt to collect them outside of the appropriate bankruptcy procedures. Mr. Sandlin contends that CitiMortgage's failure to disclose these fees and costs has deprived Mr. Sandlin of any opportunity to contest them and resulted in a violation of due process. Therefore, Mr. Sandlin seeks relief from the parties' settlement agreement and the release of his claims.

## JURISDICTION

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction over final orders from a bankruptcy court. A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[8] A

---

[7] CitiMortgage concedes that Mr. Sandlin has stayed current on his monthly principal and interest payments.

[8] *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798 (1989).

bankruptcy court's order granting summary judgment is a final, appealable order.[9]

## **STANDARD OF REVIEW**

The standard of review for bankruptcy appeals is *de novo* for the Bankruptcy Court's conclusions of law.[10]   In this case the Bankruptcy Court granted CitiMortgage summary judgment and denied Mr. Sandlin summary judgment, both conclusions of law.  The Bankruptcy Court's decision was based, in part, on the doctrine of *res judicata*.   A "bankruptcy court's application of *res judicata* is a question of law" also subject to *de novo* review.[11]

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]   The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[13]   In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[14] and the "judge may not make credibility determinations or weigh the

---

[9] *In re Hindenlang*, 164 F.3d 1029, 1031 (6th Cir. 1999).

[10] *Class Five Nev. Claimants v. Dow Corning Corp., (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002).

[11] *In re Alfes*, 709 F.3d 631, 636 (6th Cir. 2013) (citing *Bates v. Twp. of Van Buren,* 459 F.3d 731, 734 (6th Cir. 2006)).

[12] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *In re Pazdzierz*, 718 F.3d 582, 586 (6th Cir. 2013).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

evidence."[15] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[16] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[17] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[18] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[19]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[20] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]

---

[15] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[16] *Celotex*, 477 U.S. at 324.

[17] *Matsushita*, 475 U.S. at 586.

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[19] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[20] *Anderson*, 477 U.S. at 251–52.

[21] *Celotex*, 477 U.S. at 322.

## <u>ANALYSIS</u>

### I. *Res Judicata*

As is clear from the parties' submissions, this is merely the latest chapter in a long-running dispute between Mr. Sandlin and CitiMortgage over his residential mortgage. Based on the parties' settlement of Mr. Sandlin's previous claims against CitiMortgage, the Bankruptcy Court concluded that Mr. Sandlin's newly raised claims were barred by the doctrine of *res judicata*. This Court agrees. *Res judicata*, or claim preclusion, is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment.[22] Claim preclusion bars not only relitigating a claim previously adjudicated, it also bars litigating a claim or defense that should have been raised, but was not, in the prior suit.[23] "The central purpose of claim preclusion is to prevent the relitigating of issues that were or could have been raised in [a prior] action."[24]

The Court holds that the doctrine of claim preclusion applies in this case to bar most of Mr. Sandlin's claims against CitiMortgage because Mr. Sandlin could have raised the same claims in his prior litigation against CitiMortgage. Mr. Sandlin previously litigated CitiMortgage's proof of claim in bankruptcy proceedings, both before the Bankruptcy Court and

---

[22] *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). *See also Richardson v. Tenn. Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn. 1995). In *Mitchell*, the Sixth Circuit noted that "the United States Supreme Court expressed its preference for the use of the term 'claim preclusion,' rather than the more traditionally utilized term 'res judicata.'" *Mitchell*, 343 F.3d at 819 n.5 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). In *Migra*, the Supreme Court explained that "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra*, 465 U.S. at 77 n.1.

[23] *Mitchell*, 343 F.3d at 819 (citations omitted).

[24] *Federated Dep't Stores, Inc., v. Moitie,* 452 U.S. 394, 398 (1981) (quotations omitted); *see also In re Alfes*, 709 F.3d at 638.

on appeal to this Court. Mr. Sandlin also filed an earlier civil suit alleging causes of action against CitiMortgage related to his mortgage account. In May 2012, Mr. Sandlin and his wife entered into a settlement agreement with CitiMortgage to resolve all of the Sandlins' outstanding claims against CitiMortgage. As part of their settlement, the Sandlins released CitiMortgage "from all claims of any kind . . . that they may have with respect to the mortgage accounts . . . and any and all other matters between the Sandlins and [CitiMortgage] through the date of this Agreement, including without limitation, all claims that were asserted or could have been asserted as of the Settlement Date of this Agreement."[25] Based on the settlement agreement, the parties agreed to the dismissal of Mr. Sandlin's bankruptcy appeal and civil suit with prejudice, and the Court entered judgment accordingly. Therefore, the Court holds that any claims that were litigated, or could have been litigated, up to the date of the parties' settlement agreement in May 2012 are now precluded as *res judicata*.

This includes the claims Mr. Sandlin has raised for the first time in this adversary proceeding against CitiMortgage. Mr. Sandlin now challenges the manner in which CitiMortgage charged fees and applied payments to his mortgage account. Specifically, Mr. Sandlin argues that the following expenses were not listed in CitiMortgage's proof of claim in the Chapter 13 case and that CitiMortgage improperly assessed them post-petition: interest in the amount of $10,772.00; escrow advances of $3,713.30; foreclosure costs of $4,606.62; miscellaneous expenses of $846.19; bankruptcy attorney's fees of $3,390.87; "BPO/appraisal fees" of $2,670.00; inspection fees of $724.00; advances from CitiMortgage in the amount of $9,738.17; "improperly assessed arrearage charges" of $3,846.00; and "unapplied funds" of

---

[25] Settlement Agr. ¶ 5.

$8,325.00.[26]  Mr. Sandlin also argued before the Bankruptcy Court that CitiMortgage improperly held unapplied funds at various times prior to the settlement.[27]  However, the only evidence in the record for these contested fees consists of a document described by Mr. Sandlin as a "consolidated transaction history" dated June 30, 2011,[28] and information obtained from CitiMortgage in June 2011 through a Qualified Written Request, showing that CitiMortgage held $8,939.34 in an "unapplied/suspense account."[29]  Clearly, both documents existed long before the Sandlins agreed to settle their dispute with CitiMortgage.  The Court finds that for purposes of the claim preclusion analysis, no genuine dispute exists about the fact that CitiMortgage charged the contested fees to the Sandlins' account prior to the settlement.  Therefore, the Court concludes that Mr. Sandlin has now alleged claims against CitiMortgage that he could have raised in the earlier litigation.

Furthermore, the Court finds no evidence that CitiMortgage has assessed any disputed charges and fees since the settlement.  Mr. Sandlin filed suit on September 27, 2013, approximately one year after CitiMortgage finalized the modification of the Sandlins' loan agreement to conform to the terms the parties bargained for in the settlement.  However, Mr. Sandlin cites no evidence to show that CitiMortgage assessed any of the contested fees and charges in the year between the settlement and the filing of the new complaint with the

---

[26] Sandlin's Opening Br. 6-7.  Elsewhere in his brief, Mr. Sandlin states that the undisclosed fees consisted of "property inspection fees, BPO (Broker Price Opinion) late fees and other expenses." *Id.* at 10, 15.

[27] *See* Sandlin's Mem. in Support Mot. for Summ. J. 7.  Mr. Sandlin has included in these sums amounts which appear to be insurance proceeds related to a property damage claim.  The Court addresses that evidence more fully below.

[28] *See* Ex. 6 to Sandlin's Mot. for Summ. J.  CitiMortgage cites the same document in its appellate brief and describes it as a "Consolidated Note Report."  CitiMortgage's Br. 20.

[29] *See* Ex. 3 to Sandlin's Mot. for Summ. J.

Bankruptcy Court. In fact, the record shows that the only intervening change in circumstance was the Sandlins' failure to pay their local property taxes, an issue the Court addresses more fully below. There is no evidence that CitiMortgage assessed any of the contested fees after the parties had agreed to settle the Sandlins' claims. Therefore, Mr. Sandlin could have raised all these issues in previous litigation, and the doctrine of claim preclusion bars Mr. Sandlin's newly raised claims.

Mr. Sandlin argues that CitiMortgage concealed the fact of the improperly assessed fees and charges during the bankruptcy proceedings, implying that Mr. Sandlin did not actually know about the charges when he and his wife settled their claims with CitiMortgage.[30] The Sixth Circuit has held that under federal common law, the doctrine of *res judicata* will not preclude claims in a later case "where a plaintiff's failure to raise or reserve its cause of action in an earlier case between the parties was caused by the defendant's wrongful concealment of facts giving rise to the claim."[31] The Court of Appeals has explained that a plaintiff asserting fraudulent concealment must show "affirmative concealment" or "some trick or contrivance intended to exclude suspicion and prevent injury."[32] Mr. Sandlin has adduced no evidence to make such a showing in this case. Mr. Sandlin stated in his motion for summary judgment that he had only "recently acquired" the June 30, 2011 document he dubbed a "consolidated transaction history," and which purported to show the various fees and charges Mr. Sandlin now

---

[30] The Bankruptcy Court did not squarely address this contention below, and Mr. Sandlin failed to raise it as an assignment of error in his opening brief on appeal. Generally, appellate courts decline to consider issues raised for the first time in a reply brief. *United States v. Kamper*, 748 F.3d 728, 745 n.5 (6th Cir. 2014). Nevertheless, the Court finds that it will serve the interests of justice to consider the issue here.

[31] *Venture Global Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 730 F.3d 580, 585 (6th Cir. 2013) (quoting *Browning v. Levy,* 283 F.3d 761, 770-71 (6th Cir. 2002)).

[32] *Browning,* 283 F.3d at 770 (citations omitted).

contests.[33]   Viewing the evidence in the light most favorable to Mr. Sandlin, he has merely proven that he was not previously in receipt of a specific document showing the fees and charges.  Mr. Sandlin has not proven that CitiMortgage affirmatively concealed the information by some chicanery or otherwise acted with bad intent.  At best these facts indicate "concealment by mere silence" or perhaps "an unwillingness" on the part of CitiMortgage to disclose the fees and charges.[34] This showing is insufficient to establish a wrongful concealment of the information.  Without more, the doctrine of claim preclusion applies to Mr. Sandlin's newly raised claims about the accounting on his mortgage account.

In a separate but related argument, Mr. Sandlin contends that the Bankruptcy Court should have granted him relief from the settlement agreement and release due to CitiMortgage's fraud.  The Sixth Circuit has held that "release is an affirmative defense that must be pled by the defendant, which includes showing that the release was fairly executed and fairly represented the amount to which the claimant was entitled."[35]   Once a defendant has raised release as an affirmative defense, a plaintiff may prove the "the invalidity of the release, which can be done by showing mistake, incapacity, fraud, misrepresentation, unconscionability, or duress."[36]  "[W]hether a settlement agreement is a valid contract between the parties is determined by

---

[33] Sandlin's Mem. in Support of Mot. for Summ. J. 7.

[34] *Browning,* 283 F.3d at 770-71.

[35] *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1108 (6th Cir. 2010) (applying Kentucky law but also citing 66 Am. Jur. 2d *Release* §§ 40–41; 76 C.J.S. *Release* § 84) ("The burden of establishing a release is on the party relying on it, but, where a release . . . is established, the opposing party has the burden of proving facts rendering the release void.").

[36] *Id.*

reference to state substantive law governing contracts generally."[37]   Assuming Tennessee law applies to the parties' dispute over the validity of the release, "a contractual release of claims will be enforced in Tennessee consistent with the parties' intent as stated in the relevant agreement" unless a party to the release proves fraud, duress, "or some other defense to enforceability."[38] Just as Mr. Sandlin has failed to prove that CitiMortgage wrongfully concealed the fees and charges, Mr. Sandlin has no proof that CitiMortgage obtained the release of the Sandlins' claims by means of fraud.  Mr. Sandlin has failed to show then that relief from the settlement agreement and the Bankruptcy Court's Agreed Order approving the settlement is warranted.

Mr. Sandlin has further argued on appeal that CitiMortgage's handling of his account violated various provisions of the Bankruptcy Code, including the automatic stay.  The Court finds this argument unpersuasive, not only because Mr. Sandlin had a full and fair opportunity to litigate this issue previously but also because Mr. Sandlin's mortgage is no longer included in the Chapter 13 plan.  The Sandlins agreed in the parties' settlement that they would make all payments after August 1, 2012 directly to CitiMortgage and that the Chapter 13 trustee would delete CitiMortgage's claim from the Chapter 13 plan.  The Agreed Order further directed the Chapter 13 trustee to refund $1,351.00 to Mr. Sandlin from funds then-held by the trustee. Based on the terms of the Agreed Order, the Sandlins' mortgage was no longer part of the Chapter 13 plan going forward.  Mr. Sandlin has not shown then how CitiMortgage's post-settlement actions violated Chapter 13 or the automatic stay.  Therefore, this issue is without merit.

---

[37] *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992).

[38] *Siddle v. Crants,* No. 3:09–0175, 2010 WL 424906, at *5 (M.D. Tenn. Jan. 25, 2010) (citing *Bratton v. Bratton,* 136 S.W.3d 595, 601 (Tenn. 2004)); *see also Wysocki*, 607 F.3d at 1108 (citing Williston on Contracts § 73:14 (4th ed.)).

The Bankruptcy Court held that the claims currently asserted by Mr. Sandlin in the adversary proceeding were barred as *res judicata* because they fell within the ambit of the precluded claims. Mr. Sandlin contests this holding on appeal but has failed to marshal any evidence to call the Bankruptcy Court's conclusion into doubt. As such, there is no genuine dispute that Mr. Sandlin could have raised his claims about the contested fees and costs during the previous litigation between the parties. The Bankruptcy Court's order is **AFFIRMED** on this point.

## II. Escrow Account for the Property Taxes

Turning to the escrow account for the Sandlins' local property taxes, the Court finds no error in the Bankruptcy Court's decision to decide the property tax issue at summary judgment. The Bankruptcy Court correctly held that CitiMortgage had the contractual right under the terms of the parties' modified loan agreement to pay any delinquent taxes and seek repayment from the Sandlins. The undisputed evidence shows that the Sandlins bargained for the right to pay their local property taxes directly rather than escrow the taxes with CitiMortgage. CitiMortgage agreed, consummated the settlement, and thereafter held no escrow funds on the Sandlins' behalf. In fact, CitiMortgage has introduced uncontroverted evidence that CitiMortgage remitted $3,996.25 to the Sandlins as part of the settlement and loan modification.[39] More importantly, the undisputed evidence shows that following their agreement to make their own local property

_____

[39] Mr. Sandlin's summary judgment affidavit states that the funds were the insurance proceeds "for a property fire damage claim" to the residence, a claim CitiMortgage has contested. J. Sandlin Aff. ¶ 12. CitiMortgage has adduced uncontroverted evidence that it paid over these "unapplied funds" to the Sandlins prior to the settlement. Therefore, the Court finds no genuine dispute about the proper disbursement of these funds.

Even accepting Mr. Sandlin's statement as true, the fact remains that CitiMortgage released the funds to the Sandlins as a term of the settlement. There is no proof that CitiMortgage continued to hold any other funds in escrow for the payment of Mr. Sandlin's property taxes.

tax payments, the Sandlins failed to do so.  Under the parties' Modification Agreement, in the event the Sandlins failed to pay their property taxes, CitiMortgage could "exercise its rights under the Loan Documents and this Agreement and pay such amount" whereupon the Sandlins would "then be obligated to repay to [CitiMortgage] any such amount."[40] This is precisely what occurred in this case.  Therefore, the Bankruptcy Court correctly granted CitiMortgage summary judgment on this issue.

On appeal Mr. Sandlin offers two reasons to explain why he did not pay the taxes: first, CitiMortgage should have paid the 2012 property taxes with funds CitiMortgage had collected from Mr. Sandlin and held in escrow prior to the settlement, and second, Mr. Sandlin had appealed his 2012 tax assessment. Mr. Sandlin has not shown that CitiMortgage held escrowed funds for the 2012 property taxes or that his appeal of his tax assessment affected his obligation to pay the taxes.  Even accepting these explanations as true, the fact remains that Mr. Sandlin did not pay the 2012 county property taxes and did not pay the 2013 taxes at all.  Mr. Sandlin has offered no evidence to explain this state of affairs, particularly why he paid no property taxes for 2013.  CitiMortgage responded to Mr. Sandlin's failure to pay the taxes by exercising its rights to pay the taxes on Mr. Sandlin's behalf.  In the absence of a genuine dispute over whether the Sandlins paid all the 2012 and 2013 city and county property taxes, the Bankruptcy Court properly decided the property tax issue in favor of CitiMortgage and denied Mr. Sandlin's motion for summary judgment.  Therefore, the Bankruptcy Court's order is **AFFIRMED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 18, 2014.

---

[40] Modification Agr. ¶ 5.